(No. 11756.—Reversed and remanded.)
HENRY F. C. DETTMER et al. Appellees, vs. THE ILLINOIS
TERMINAL RAILROAD COMPANY, Appellant.

*Opinion filed April 15, 1919.*

1. DRAINAGE—*right of land owner to change a natural water-course.* An owner of land has a right to change the channel of a water-course on his own land provided he returns the stream to its natural channel before it leaves his land and without damage to the servient lands below him by causing the waters to flow onto or against the servient lands out of the natural channel.

2. SAME—*land owner changing a natural water-course cannot deprive upper lands of right of drainage.* The right of drainage through a natural water-course is an easement appurtenant to each tract of land through which the water runs, and a land owner can not so change the natural course of a stream on his own land as to deprive upper land owners of their right to have the old water channel kept open, when the failure to do so deprives them of their right to drainage in times of heavy rainfall.

3. SAME—*a railroad company takes right of way across water-course with notice of drainage rights.* A railroad company takes a right of way across a creek valley with the implied understanding that it is to so conduct its business as to meet all changing conditions required by the public welfare or safety, and it cannot fill up part of an old water-course, and, after making a new channel that is insufficient to care for proper artificial drainage, insist upon the upper land owners paying for removing obstructions to such drainage caused by its embankment.

4. SAME—*what is not taking of railroad property without compensation.* Compelling a railroad company to remove its embankment where it crosses the old channel of a stream whose natural course has been changed by the railroad and to construct an artificial drain at the old channel under the Levee act does not constitute such a taking of the property of the railroad without just compensation as violates the provisions of the State or Federal constitution.

5. SAME—*when a railroad company may be required to build bridge and remove obstructions at its own expense.* Where it is necessary to the construction of an efficient drainage system under the Levee act, a railroad company may be required at its own expense to enlarge its bridge where it crosses the true channel of a stream that is to be deepened or widened by the proposed drainage, and the company may be compelled to remove any obstructions placed there by the construction of its embankment.

287 — 33

6. SAME—*when railroad company is to be notified to make improvements for drainage.*  Under the Levee act it is not contemplated that the drainage commissioners shall notify a railroad company to make necessary improvements for a proposed drainage system until the right of way is acquired, the assessment of benefits and damages has been heard and confirmed and it is definitely determined that the ditch will be constructed across the railroad right of way and that the commissioners are ready to begin the construction of the ditch at or near the railroad.

7. SAME—*when commissioners will be required to construct the proposed ditch through an artificial channel made by railroad company.*  Where a railroad company has changed the natural course of a stream crossed by its right of way without prejudicing the rights of upper or lower land owners, drainage commissioners proposing to drain the valley of the creek under the Levee act will be required to construct their ditch through the artificial channel under the railroad bridge if they can obtain an efficient system of drainage by so doing, but if not, then they may construct the ditch through the old channel and require the railroad company to build a new bridge, the evidence being specifically directed to the question whether or not efficient drainage can be established through the artificial channel.

8. SAME—*ditch crossing right of way of railroad should have opening large enough to care for flood waters.*  A railroad company cannot be legally required to construct a larger opening or more bridging than is necessary or proper for carrying the waters of a levee drainage system through a natural outlet or an artificial outlet substituted for the natural one, but the opening should be sufficient to care for and properly move the flood waters that will come to it.

9. SAME—*commissioners are prima facie entitled to have proposed ditch cross highway in natural channel.*  Drainage commissioners are *prima facie* entitled to have their proposed ditch cross a highway under an existing bridge over the natural channel of a creek, and it is error for the court to so modify the commissioners' report as to change the route of the proposed ditch so that it will cross the highway where there is no natural depression or natural water-course, where there is no evidence in the record warranting such action.

10. SAME—*objector may prove that proposed drainage system has no sufficient outlet—what proof is incompetent.*  One objecting to the confirmation of the report of levee drainage commissioners may prove by competent evidence that the proposed system will

not have a sufficient outlet to give efficient drainage, but the introduction of plats showing a railroad bridge at such outlet is not competent for such purpose without showing all the conditions surrounding the bridge.

11. SAME—*a railroad company cannot complain of any matter prejudicial to Director General.* In a proceeding for the organization of a drainage district under the Levee act, where there is no showing that a railroad company will have to violate à positive order of the Federal government in making required improvements for the proposed drainage system, the company cannot complain of any matter it may consider prejudicial to the government or to the Director General of Railroads but may make application to have the Director General made a party to the proceeding.

APPEAL from the County Court of Madison county; the Hon. HENRY B. EATON, Judge, presiding.

A. M. FITZGERALD, GEORGE D. BURROUGHS, and H. S. BAKER, for appellant.

LELAND H. BUCKLEY, (CHARLES E. GUELTIG, of counsel,) for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Appellees, Henry F. C. Dettmer, John Steinmetz and John Gremer, commissioners of Cahokia Creek Drainage and Levee District, filed in the county court of Madison county, December 11, 1916, under section 11 of the Levee act, their report, stating, among other things, that they had determined the starting point, route and terminus of the proposed works and the lands to be included in the proposed drainage district, to be known as Cahokia Creek Drainage and Levee District, and found by their report that the lands included within the boundaries of the proposed district would be benefited by the construction of the proposed works and that the aggregate amount of benefits would far exceed the cost of the proposed works, recommended that the proposed district be organized and asked

for the confirmation of the report. Appellant and certain other land owners filed objections to the confirmation of said report. The court heard evidence and modified the report by changing the route of the proposed ditch or drain, approved the report as modified, made the usual statutory findings and declared the district duly organized. Both parties in this appeal prayed and were allowed appeals. Appellant, the Illinois Terminal Railroad Company, has perfected its appeal, and appellees, the drainage commissioners, have assigned cross-errors.

The scheme of the proposed district is to drain the Cahokia creek valley. The watershed of the proposed district comprises about 213 square miles, of which about 170 square miles are above the Illinois Terminal Railroad Company's bridge and the remainder is below the bridge. Cahokia creek is a winding, tortuous stream, and by reason thereof, and because it is impeded by brush, trees and other obstructions, does not allow a free flow of the water in times of heavy rain. It rises above the upper part of the proposed drainage district and empties into Diversion canal. The Diversion canal is an artificial ditch 100 feet wide on the bottom, constructed to carry off the water of Cahokia creek and Indian creek into the Mississippi river. Indian creek flows into the Cahokia creek above Diversion canal and below the proposed district. The Chicago and Alton railroad bridge crosses the Diversion canal below the mouth of Cahokia creek. Diversion canal is about two and one-half miles below the proposed district. It is not proposed by appellees to deepen, widen or otherwise improve the channel of Cahokia creek below the proposed district. The watershed of the Diversion canal district is about 258 square miles. The improvement proposed by appellees is an open ditch, which is to form an additional channel for Cahokia creek, and begins at the center of the creek, near the Chicago, Indianapolis and St. Louis railroad, and extends to the Bohm public road northwest of Edwardsville,

a distance of about six miles. The distance meandered by the creek channel between said two points is about 16 miles. The open ditch is to be of the average width of 30 feet for the upper half of the district and is to have a space between waste heaps for the passage of water of about 70 feet. In the easterly half of the lower portion of the district the ditch is of the average width of 40 feet with a space between waste heaps of 80 feet, and in the westerly part of the district from a point near the Springfield public road west, an average width of 50 feet with a space of 90 feet between waste heaps. The proposed improvement will provide a new channel on as straight a line as possible between the termini aforesaid. It is intended to prevent many overflows, reduce the time of other overflows, and very greatly increase the speed and discharge of flood waters through the valley and reduce the height of such flood waters. The natural channel of the creek is about 40 feet between the banks, but in time of heavy rains and freshets it leaves its banks and covers its valley. There are 3124 acres of land in the proposed district and lying in said valley.

Appellant's railroad was constructed in 1903 and 1904, and as constructed ran north and south on a high trestle from bluff to bluff across the valley of the creek, a distance of more than a quarter of a mile. This railroad across that valley is about 3300 feet east of and runs parallel with the Bohm road, the western terminus of the proposed ditch. The Alton public road runs northwest across the ditch and the creek at a point about one-quarter of a mile east of appellant's road, and the Springfield road runs northeast across the proposed ditch at a point about 5100 feet east of appellant's railroad and across the creek at a point about 400 feet southwesterly of the crossing of the road and the ditch. The Wabash railroad runs about east and west on or near the south edge of the creek valley on an embankment from four to eight feet high, and crosses appellant's road a very short distance south of appellant's bridge on

the south side of the creek valley, and also crosses the creek between the Alton road and the Springfield road about a half mile east of appellant's road and about 300 yards south of the proposed ditch. There is a 30-foot bridge at the crossing of the Wabash railroad and appellant's railroad, the bottom of the opening being about four feet higher than the top of the bank of the creek just north of this opening.

When appellant's railroad was first constructed, a high trestle 329 feet long at the top, with an opening about 140 feet wide at the bottom, spanned the old channel of Cahokia creek, and a concrete and steel bridge with about a 60-foot opening in the clear was constructed south of the trestle and against the bluff on the south side of the creek valley. Cahokia creek runs south and west in a meandering line until it crosses the Springfield road, and then it runs in a northwesterly direction in a similar line across the Alton road and the proposed ditch against the bluff on the north side of the valley. From the latter point it meanders southwest across the valley, and after striking the bluff a few hundred feet east of appellant's road it then runs about due west to a point about 125 feet east of appellant's bridge aforesaid. Until some time after 1904 the old channel of the creek at said last point took a course north for about 400 feet, then crossed appellant's right of way in a curve to the northwest under appellant's trestle, thence curved and ran southwest to a point about 300 feet west of appellant's bridge, and then abruptly turned and flowed in a meandering line northwesterly to the Bohm road, at which point is the western terminus of appellees' ditch. A complete horseshoe in figure was thus made by the creek around appellant's right of way on the north and through its trestle and thence southwest, the toes of the horseshoe being east and west of appellant's bridge and more than 400 feet apart. A new creek channel connecting the two points of the horseshoe was constructed by appellant about the time it completed its bridge and trestle

there, thus causing the creek to run a new channel under its bridge. This new channel is all on appellant's right of way. Later it filled up the old channel running under its trestle and filled up the trestle there, making a large and high embankment. This construction did not leave sufficient opening for the water to pass through appellant's embankment, and as a consequence it caused the water above the embankment to be banked up several feet higher when the usual big rains would fall, until finally in 1915 the bridge was washed out by reason of a very heavy rain and was replaced soon after by the present railroad bridge there, which has an opening of about 104 feet at the surface of the ground and has two wings on either side of about 54 feet, making the opening at the top about 212 feet. Appellees' ditch first follows the general course of the creek, crossing it many times, and running southwesterly to its crossing on the Springfield road. It then runs about due west in a straight line to the old channel of Cahokia creek and under appellant's old trestle. After passing through appellant's embankment in the old channel it then runs northwesterly to its terminus, at the crossing of the Bohm road and the creek. It is 60 feet wide between its banks at the surface where it passes through appellant's embankment and crosses the creek four times between appellant's road and the Springfield road, one of these crossings being on the Alton road, where there is a bridge. The ditch will carry about four times as much water as the creek channel. Appellees claim in their report that an opening of the width of 120 feet through appellant's embankment at the old channel would be required to take care of the water that would be carried through their ditch, and that the width of such opening is based upon the further assumption that the present opening under appellant's bridge 400 feet south of the old channel crossing would also be maintained.

After hearing the evidence on the objections the court overruled all objections except that of appellant as to the location of 'the proposed ditch; ordered the report of the commissioners to be modified, changing the route of the proposed ditch so that its center line would pass through the embankment of appellant 1.38 feet north of the center of the present bridge of appellant; made a finding that the line through the embankment where the court located the ditch is in a natural depression or water-course of said creek, and that it is necessary that an opening 120 feet wide north of the north pier of appellant's bridge be made through said embankment at that point, and that the present channel and opening under the bridge be maintained. The court then made a further change in the route of the ditch by ordering it to cross the Alton road south of the junction of said public road and Cahokia creek and at a point where no natural depression or water-course or bridge crossed the public road, and ordered that $9000 be included in the engineer's estimate of $81,000 to pay the cost of the bridge across the ditch on the public road required by this change. The court then entered an order that appellant remove its embankment for a distance of 120 feet northwardly of the present north pier of its bridge across the entire width of the right of way down to the natural surface, so as not to interfere with the construction of the ditch or the flow of water through the same, and that any bridge built by it should have a clear span of 120 feet between its piers or abutments and to be built at its cost, and that appellant should comply with said order within sixty days after notice shall be given to it by appellees to remove said embankment, etc., as provided by statute.

Appellant complains of the order of the court in so far as it directs that it remove its embankment and build a new bridge or lengthen its present bridge at its cost, on notice of appellees. Appellees complain of the order of the court in directing the change of the course of their ditch

and for its failure to approve their report and plans as submitted, on the ground that it gives them a ditch or improvement less efficient and at much greater cost. Both parties urge that the court's finding is erroneous that there is or was a natural depression or water-course under the appellant's embankment where it ordered the ditch to be located and constructed. As a matter of fact, the court by its order re-located the ditch through appellant's embankment on the line contended for by it on the hearing as the one most feasible and least expensive. Appellees' engineer first recommended that the proposed ditch be constructed through the appellant's artificial channel under its present bridge and that the opening at that place be enlarged. For some reason that plan was abandoned.

Appellant's real contention is that the court erred in ordering it to pay the cost of extending its bridge and removing its embankment. This argument is based upon the general proposition that its property cannot be thus taken without just compensation, and that an owner of land has a legal right to change the channel of a water-course on his own land, provided he does so and returns the stream to its natural channel on his own land and without damage to the servient lands below him by causing the waters of the stream to flow onto or against the servient lands, and thereby create artificial channels or flows of water on the servient lands out of the natural channel. The second rule of law, as contended, is a well established rule. (*Daum* v. *Cooper,* 208 Ill. 391.) While this is a true proposition of law, it is to be further understood that the natural course of a stream of water cannot be thus changed so as to deprive upper land owners or owners of dominant tracts of their legal right to have the old water channel kept open when the failure to do so would deprive them of their legal right to drainage. The right of drainage through a natural water-course is an easement appurtenant to each tract of land through which the water-course runs, and each owner

is bound to take notice of the easement possessed by other owners. (*Chicago, Burlington and Quincy Railway Co. v. People,* 212 Ill. 103.) A railroad company cannot legally fill up a part of an old water-course and make a new channel that is insufficient to provide for an increased flow of water that will be occasioned by needed drainage by proper artificial means, and then insist on the upper land owners paying for removing obstructions to such drainage and increasing the amount of its bridging. Appellant took its right of way across Cahokia creek with the implied understanding that it was to so conduct its business as to meet all changing conditions required by the public welfare of society. (*East Side Levee District v. East St. Louis and Carondelet Railway,* 279 Ill. 123.) The fact that an artificial drain is to be constructed, enlarging the channel of the creek and making it necessary to remove appellant's embankment at the channel, would not constitute such a taking of its property as invades or violates the provisions of the State or Federal constitution, as contended by appellant. (*Cache River Drainage District v. Chicago and Eastern Illinois Railroad Co.* 255 Ill. 398; *Sanitary District v. Chicago and Alton Railroad Co.* 267 id. 252; *Chicago, Burlington and Quincy Railway Co. v. People,* 26 Sup. Ct. Rep. 341.) As the railroad company was insisting in this case that the artificial channel under its bridge is to be considered as the true channel of the creek because made entirely on its own property in accordance with its legal rights, if it is right in its contention, the law will compel it to remove all of the obstructions placed there by it if the same is required in order to give appellees an efficient drainage system, and to construct any further bridging necessary at its own expense. After those obstructions are removed the appellees would be required to do all further work in the channel, if their plans should contemplate or provide for a further deepening of the channel there. The court by its order stated the law correctly in this regard

if the drainage ditch is to be constructed through the appellant's artificial channel and the channel enlarged. It is in accordance with section 56 of the Levee act, which provides: "When any ditch or drain or other work of enlarging any channel or water-course is located by the commissioners on the line of any natural depression or water-course, crossing the road of any railroad company where no bridge or culvert or opening of sufficient capacity to allow the natural flow of water of such ditch or water-course, is constructed, it shall be the duty of the commissioners to give notice to such railroad company to construct or enlarge such bridge or culvert or opening in the grade of such road, for such ditch or ditches or other work, of the dimensions named in such notice, within twenty days from the service thereof." This section also imposes a penalty on the railroad company if it fails to comply with the directions in such notice. Section 55 of the Levee act provides that the corporate authorities of a railroad are required, at their own expense, to construct such bridge, culvert or other work, or to replace any bridge or culvert temporarily removed by such commissioners in doing their work, when constructed on the line of any natural depression, channel or water-course. While the court might have omitted this order and have entered it with the usual find-- ings, as provided in section 16 of the Levee act, still we are unable to see in what way appellant was prejudiced by this order. Appellant is only required to comply with the order when notified by the commissioners, and under the statute it is not contemplated that they shall give such notice until the right of way is acquired, the assessment of benefits and damages has been heard and confirmed, and it is definitely determined that the ditch will be constructed across the right of way of appellant and that appellees are ready to begin the construction of the ditch at or near the railroad.

As the railroad company must be conceded, under the law, to have the right to change the channel of the stream when it is done entirely on its own land and without prejudice to the legal rights of upper or lower land owners, appellees will be required to construct their ditch through the appellant's artificial channel under its bridge if they can obtain an efficient system of drainage for their district by so doing. If such is not possible, then their lawful right is to construct their ditch through the old channel of the creek, as provided in their report, in which case the railroad company would have to remove its obstructions there and put in a new bridge at its cost. The fact that it may cost the drainage district a trifle more to go through the artificial channel of appellant should not be considered under the evidence in this record. The proof in this case is that it will cost appellant more than $125,000 to remove its embankment and build a new bridge over the opening required by appellees where appellant filled up the old channel of the creek, while it will cost only about $55,000, under the evidence, to remove the embankment and extend the bridge in accordance with the court's order. The evidence in this record should have been, but was not, specifically directed to the question whether or not an efficient drainage district could have been established by appellees by driving their ditch through appellant's artificial channel. It should be further shown that such a ditch would be practicable and feasible as well as efficient. The difference in cost of the two ditches in question would only be material in case it was shown that an efficient ditch through the artificial channel would be at a cost prohibitive,—*i. e.*, at a cost which would exceed the benefits to the lands drained. If no such efficient and feasible ditch can be constructed through the artificial channel, then appellees would be entitled to construct the same in the old channel and through appellant's embankment, if it is shown that an efficient and feasible drainage system, within the meaning of the statute, can

be thus established. Under the evidence in this case we are not enabled to definitely and satisfactorily determine these questions. The evidence was mainly directed to the question whether or not the present opening under appellant's bridge and the opening under its bridge where it is crossed by the Wabash railroad were sufficient to care for the waters passing down the valley without causing unusual and unnecessary overflows during customary heavy rains that fall in that neighborhood. According to the expert testimony of appellant's witnesses those openings are amply sufficient to properly care for such waters, but according to appellees' witnesses they are entirely insufficient and will cause much overflow and damage in the valley above appellant's railroad and prevent appellees from establishing a proper and feasible drainage district.

As this judgment will have to be reversed for error, we do not deem it proper for us to discuss the weight of the evidence. We may further say, however, after considering all the evidence together and the plat of the valley and creek channel, we are rather impressed with the idea that an efficient and feasible ditch might be obtained by constructing appellees' ditch on their present plans up to the Alton public road and through the 60-foot bridge there crossing Cahokia creek; then extending the ditch in a straight line to appellant's present bridge or extending it into the creek channel a part of the way and widening the channel; then by a straight line to the artificial channel; then in a straight line, if that is desirable, northwesterly to the beginning of the final approach of their ditch and in a straight line to its terminus. This proposed ditch would come much nearer following the old creek channel than appellees' ditch, and while it would make a curve at the Alton public road, it would secure, according to the plats before us, a much straighter ditch after it passes west of appellant's railroad and one much more in line with the general flow of the creek at that point. There may be much

in the actual conditions against our suggestion, and we only make this suggestion because there appears to be nothing in the record against it, and for that reason we are not satisfied to merely reverse this judgment with directions.

Before leaving this proposition we will further say, that in discussing the sufficiency of appellant's opening at its present bridge its counsel frequently make the declaration that said opening is clearly and conclusively shown to be sufficient to care for all the water that would be brought to it within the proposed ditch. For such opening to be sufficient under the law it must not only be sufficient to care for the waters that are brought to it within the banks of the new ditch, but it must be also sufficient to care for and properly move the flood waters that will come to it. Parties changing or restraining the flow of water must provide against the consequences of unusually heavy rainfalls which may be reasonably expected to occasionally occur, and they must also care for overflow waters that must pass through the natural waterways obstructed or lessened. (*Chicago, Peoria and St. Louis Railway Co.* v. *Reuter,* 223 Ill. 387.) But such parties or a railroad company cannot be legally required to construct a larger opening or more bridging than is necessary or proper for carrying the waters of a drainage system through a natural outlet or an artificial outlet substituted for the natural one. *East Side Levee District* v. *East St. Louis, Columbia and Waterloo Railway Co.* 279 Ill. 362.

There was no evidence in the record to sustain the court's finding that there was a natural depression under appellant's embankment and that such embankment was required to be removed by appellant so as to accommodate the ditch as located by the court. But this is of no material consequence in the decision of this case. If the ditch is constructed there and it becomes necessary for the proper drainage to enlarge the opening, the embankment will have to be removed at the appellant's cost, as aforesaid, for the

April, '19.]    DETTMER v. ILLINOIS TERM. R. R. CO.    527

reasons already given, as the removal of the embankment will simply effect the necessary widening of the artificial channel, which must then be treated as the natural channel. We are not to be understood, however, as holding that this opening will be sufficiently wide to accommodate all the waters that will be carried there by the ditch or that it will not be wider than is necessary for such purpose.

The court committed serious error in changing appellees' ditch so as to run south of the 60-foot bridge over the creek on the Alton road and to run across the road at a point where there was no natural depression or natural water-course. Appellees had the right to have their ditch cross this road in the natural channel under the Alton road bridge, under the evidence in this record. It has already been shown that they will be required to build a new bridge at a cost of $9000, and we are unable to find any reason or evidence to sustain the court in this change. It is mainly for this reason that we reverse the judgment in this case.

Complaint is made by appellant that the court ruled out certain evidence tending to show that the ditch proposed by appellees and the drainage system contemplated by them would not be feasible because of the fact that the channel of the creek from the Bohm road to the Diversion canal would not be sufficient to carry off the increased amount of water that would be thrown into it in a given time, and that for that reason it would cause a backing up of the water in the ditch above appellant's bridge. It is sufficient here to state that appellant is entitled to prove by any competent evidence that the drainage system of appellees will not have a sufficient outlet, as this goes to the question whether or not appellees' drainage system is feasible. There is no positive provision in the Levee act, as in the Farm Drainage act, that the commissioners must provide a main outlet of ample capacity and proper construction, nevertheless it is the duty of the drainage commissioners to provide and construct such main outlet when the same

is required to give efficient drainage.   (*Binder* v. *Langhorst,* 234 Ill. 583.)  No particular evidence is pointed out to us that the court excluded and which would be competent evidence for that purpose.  Merely introducing plats of plans and construction of the Chicago and Alton bridge across Diversion canal would not be competent for such a purpose, particularly without showing all the conditions surrounding such bridge.  The apparent purpose of the introduction of such evidence was to show that the Alton bridge had no more capacity or opening for the passage of water than the opening of appellant's bridge.  Appellant's embankment and bridge were shown to be 40 feet high above the surface and 50 feet above the bottom of the channel of the creek.  No attempt was made to show the conditions surrounding the Alton bridge, and such proof was not admissible merely for the purpose of comparing the size and capacity of the openings.

It is finally contended by appellant that the court erred in not re-opening the case after all the evidence had been taken and the cause decided by the court and permitting appellant to show that the United States was at war with Germany, that the price of steel was higher by reason thereof, and that appellant had been advised by the government to avoid the expenditure of any funds other than those necessary to properly maintain its road-bed and not to attempt any work of magnitude, and that the government had or would take control of its road.  No sufficient reason was shown why this evidence might not have been introduced earlier, even if it would in any way affect the issues in this case.  Besides, appellant could not complain of any matter that would be prejudicial to the government or to the Director General but only of matters that would be prejudicial to it.  There were no matters disclosed in appellant's affidavit showing that it would have to violate any positive order of the government to its prejudice.  If it thought that the Director General would be prejudiced

by the decision it would have been more proper to have made application to have him made a party to this proceeding. We do not think the court committed error in refusing to re-open the case.

For the reasons already given the judgment of the court is reversed and the cause is remanded.

*Reversed and remanded.*

---

(No. 12464.—Reversed and remanded.)
FRANK WRIGHT *et al.* Plaintiffs in Error, *vs.* W. CARL McKINNEY *et al.* Defendants in Error.

*Opinion filed April 15, 1919.*