(No. 13294.—Reversed and remanded.)

INDIAN CREEK DRAINAGE DISTRICT No. 2, Appellee, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed December 21, 1920.*

1. DRAINAGE—*section 17a of Levee act, as to impaneling jury, should be construed with entire Eminent Domain act.* Section 17a of the Levee Drainage act, providing that the jury to assess benefits and damages shall be impaneled "in accordance with the provisions of section 6" of the Eminent Domain act, should be construed with the entire Eminent Domain act, as section 6, alone, does not provide for filling the panel if any of the twelve fail to qualify.

2. SAME—*on confirmation hearing a railroad company may introduce evidence of damages by proposed construction of channel across right of way.* On the hearing for confirmation of the assessment roll and to assess benefits and damages from an improvement in a levee drainage district a railroad company may introduce any proper evidence of damage to its property by the proposed construction of a drainage canal across its right of way, as the report

of the drainage commissioners on the question of damages does not deprive the railroad company of the right to have the question tried by a jury.

3. SAME—*what question should not be submitted to the jury on hearing of benefits and damages from proposed drainage canal.* On a confirmation hearing as to the benefits and damages from the construction of a proposed levee drainage canal across the right of way of a railroad company, evidence of the damages to the railroad company should be restricted to the question of the damage from the construction across the right of way as planned, and the question whether the present plan of construction is more feasible than the enlarging of a natural channel, over which the railroad has a permanent steel bridge, should not be submitted to the jury.

4. SAME—*what is a natural water-course within meaning of sections 55 and 56 of Levee Drainage act.* The natural water-course of a valley is the place where the water flows according to nature, and a natural depression, within the meaning of sections 55 and 56 of the Levee Drainage act, is not every low place in the valley where water would accumulate or flow when in flood time water has spread over all the valley, but it is that lowest point in the valley where the natural drainage takes the water flowing from the dominant to the servient lands.

5. SAME—*when drainage district cannot compel railroad company to pay for bridging new channel.* A railroad company which has made ample provision to care for the natural flow of water, accelerated by improved drainage methods, which in a state of nature drains or flows in a natural water-course which its track crosses, has fulfilled its drainage obligations, and where the drainage commissioners of the district decide to abandon the natural water-course and construct a new channel the railroad company cannot be compelled at its own expense to build or enlarge a bridge over the location chosen for the artificial channel.

6. SAME—*when compensation must be paid to railroad company for property taken or damaged.* A proposed change in a drainage system which increases the burden imposed by law upon a railroad company amounts to the taking or damaging of its property for public use and compensation must be made therefor.

7. SAME—*instruction inviting the jury to base verdict on their own inspection of premises, regardless of testimony, is erroneous.* In a confirmation hearing as to the benefits and damages from the construction of a proposed levee drainage canal, it is error to give an instruction which amounts to an invitation to the jury to ignore the testimony of the witnesses and to base their verdict upon their own inspection of the premises, if they are of opinion that such inspection furnishes a more reliable basis for their decision.

Appeal from the County Court of Morgan county; the Hon. PAUL SAMUELL, Judge, presiding.

WILLIAM H. DIETERICH, and WILSON & BUTLER, (J. A. CONNELL, of counsel,) for appellant.

WORTHINGTON, REEVE & GREEN, for appellee.

Per CURIAM: This is an appeal by the Chicago, Burlington and Quincy Railroad Company from a judgment of confirmation entered by·the county court of Morgan county upon the verdict of a jury called to assess benefits and damages to said railroad in a proceeding to improve the drainage in Indian Creek Drainage District No. 2. Said district was organized under the Levee act by an order of the county court of said county, and thereafter an assessment roll was filed, as provided in said act, on September 20, 1919, and an order entered for a venire for a jury to assess benefits and damages. The district claimed $15,000 benefits, while the railroad company denied any benefits and claimed damages on account of the proposed improvement in the sum of $265,747. The jury found no benefits and no damages as to the property of the railroad company, and judgment was entered on that verdict. This appeal followed.

The drainage district by these proceedings plans to construct a main ditch across Indian creek valley in portions of Morgan and Cass·counties, which at this point was to be 52 feet wide at the top and 26 feet at the bottom. The depth of the excavation of the proposed artificial ditch from the bend in the creek about 2000 feet east of the trestle to the railroad was to be about 13½ feet. Indian creek in its ordinary condition has well defined banks and a bed. At and near the point where this main ditch was to be constructed the creek was about 25 feet wide at the surface and a little narrower at the bottom, the normal depth of the water being about three feet. Through this

part of its valley it ran, with many curves, in a general
northwesterly direction until it passed to the north out of
Morgan county into Cass county near the village of Arenz-
ville. The Chicago, Burlington and Quincy Railroad Com-
pany for years has owned and operated its line of road
through and across a part of this valley. In the northerly
part of Morgan county the railroad crosses Indian creek
near a bend in the creek and then runs in a northerly direc-
tion on the east side of Indian creek and passes through
Arenzville, which lies in Cass county at the north edge of
the valley. The railroad crosses the valley on an embank-
ment about 10 feet high. Just south of Arenzville the rail-
road company left an opening in its embankment and con-
structed a wooden trestle, on which its tracks are located.
This trestle, the evidence shows, was built to take care of
the overflow waters from Indian creek. About 1700 feet
southerly from the trestle the railroad crosses Indian creek
proper on a steel bridge. Indian creek runs about west un-
der this steel bridge, then curves so that it flows about north
and passes through the west edge of Arenzville. From the
difficulties of construction in that locality the railroad com-
pany has only a single track across this valley except for a
switch track that extends for a short distance south from
Arenzville and across the proposed ditch. The width of
Indian creek valley in this locality varies, and counsel in
their briefs do not agree as to its average width. The evi-
dence tends to show that at some points it is from bluff to
bluff 1400 feet wide and at other points considerably less,
it being claimed by counsel for appellee that the evidence
shows it is not over 200 or 300 feet wide at its narrowest
point in that portion of the valley where the proposed main
ditch is to be excavated. The approximate conditions and
localities of the bed of Indian creek proper, the railroad
and the proposed main channel of the new ditch, with other
features and surroundings in that locality, can be better un-
derstood by reading what has been said above in connection

with the following map, the dotted lines indicating the proposed channel:

The evidence tends to shows that in times of high water the banks of Indian creek are overflowed and this water spreads over the lands east of the right of way until it passes out under the trestle into the natural bed of the stream near Arenzville. The evidence also tends to show that the plans of the district are that after the construction of the proposed channel the old bed of Indian creek will not be needed to take care of the ordinary flow of water, but that such ordinary flow will pass westerly through this proposed channel and under the railroad at the location of the present wooden trestle just south of Arenzville, and that there will be no further use for the steeel bridge of the railroad company across the present natural bed of Indian creek. The evidence tends to show that the district proposes by its plans to carry not only the ordinary flow of water under the proposed new bridge to be constructed at the location of said wooden trestle but the flood waters as well, although the evidence tends to show, also, that after the proposed main channel is constructed it will not be of sufficient capacity to take care at all times of the flood waters in addition to the ordinary flow of water, and that at times of high floods the entire low lands of the valley will be covered from bluff to bluff, and that as to taking care of the flood waters, the only effect of the construction of the drainage ditch will be to cause them to flow off more quickly and more directly from the submerged lands of the valley than they have done in times past under the steel bridge and the wooden trestle.

One of the first objections raised by counsel for appellant is that the trial court erred in not transferring the case from the county court of Morgan county, on their motion, to the county court of Cass county under the provisions of an act which was passed by the legislature in 1919 and was returned by the Governor to the Secretary of State without his approval before the adjournment (June 30, 1919,) of the legislature which enacted the law. (Laws

of 1919, p. 442.) The trial court refused to allow the motion to transfer the cause to Cass county under the provisions of this act on the ground that the act was not in force until July 1, 1920. As this cause must be reversed for other reasons we deem it unnecessary to pass on the question as to when the act went into force, as the act, in any event, will be in force when the case is next tried.

Counsel for appellant next argue that the court erred in the selection of the jury to try the case; that section 17*a* of the Levee Drainage act (Hurd's Stat. 1917, p. 1092,) provides that the jury to assess the benefits and damages under the act shall be impaneled "in accordance with the provisions of section 6 of an act entitled 'An act to provide for the exercise of the right of eminent domain;'" that section 6 of the Eminent Domain act does not provide in any way for filling the panel of twelve if any of the twelve shall fail to qualify; (Hurd's Stat. 1917, p. 1406;) that the method for filling such vacancies is provided in section 7 of the Eminent Domain act, and that the trial court, after the exhaustion of the original panel as provided for in section 6, without legal justification under section 17*a*, filled the venire by selecting individual freeholders as provided for in section 7, and compelled the railroad company, after the exhaustion of all of its challenges, to accept a jury of whom some were selected under section 7. Counsel in no way suggest what provisions of any act should be followed to fill the venire provided for in section 6. This court has held that the original provisions of the Levee Drainage act passed in 1879, which authorized the court to impanel the jury in a certain way, were unconstitutional. (*Wabash Railroad Co.* v. *Coon Run Drainage District,* 194 Ill. 310.) This court, however, later held that the act was not void as a whole; that the same could be held complete and enforcible if read in connection with the Eminent Domain act. (*Smith* v. *Claussen Park Drainage District,* 229 Ill. 155.) Under the reasoning of this last case it seems clear that the

trial court did not err in construing as it did section 17*a* of the Levee Drainage act with the entire Eminent Domain act.

Counsel for appellant next insist that the proof offered by appellee to show that it had tried, but failed, to agree with appellant was insufficient to comply with the provisions of section 2 of the Eminent Domain act. The evidence shows the chief engineer of the drainage district negotiated, off and on, for several months to see if he could not get an agreement and a contract with the authorities of the railroad company to settle as to the benefits and damages for the construction of the so-called main drainage channel. While he testified that he did not offer any sum of money for the damages to the railroad and that he was not authorized to offer any definite sum of money, it appears from his testimony that during these negotiations he was told that because the railroad was under the control of the Federal government the railroad management had no authority to make such a contract; that later he wrote a letter to the authorities in charge of the railroad work and told them that if he could not get some agreement with them the district would have to go on and condemn; that this letter was written several months before the beginning of these proceedings and he never received an answer. Under the reasoning of this court in *Booker* v. *Venice and Carondelet Railway Co.* 101 Ill. 333, *Reed* v. *Ohio and Mississippi Railway Co.* 126 id. 48, *Chaplin* v. *Highway Comrs.* 129 id. 651, *County of Mercer* v. *Wolff,* 237 id. 74, and 2 Lewis on Eminent Domain, (3d ed.) sec. 498, we are of the opinion that on this record the evidence was sufficient to meet the requirements of the statute as to showing that an ineffectual effort in good faith had been made to reach an agreement with the railroad company as to the taking of the property of the railroad.

All counsel agree that the real question to be determined is whether the railroad company should receive compensation for the right of way proposed to be taken and the

expense entailed by it by reason of the construction of the artificial ditch across its right of way at the trestle and the diversion into said ditch of the water naturally flowing in the bed of Indian creek. Their briefs and arguments are confined largely to this question. Appellant contends that this proposed work would necessitate the elevation of its tracks about six feet and the re-ballasting of the same; the construction of a temporary bridge and a permanent steel bridge over the proposed ditch at the location of the trestle; the entailing of damages by delay of traffic and additional expense in handling business over its railroad during the period of construction, which the evidence tends to show would require six months' time, and also incidental damages to its property from having to raise its station and tracks at Arenzville. To avoid this liability for compensation and damages the drainage district relied chiefly, if not solely, upon the claim that at the site of the trestle there existed a natural depression or water-course, and that the provisions of sections 55 and 56 of the Levee Drainage act required that the railroad company should build, at its own expense, a bridge across the proposed channel at the location of the present trestlework and reconstruct its entire right of way where required, without the drainage district paying damages for any of this work.

Counsel for appellee in effect argue that all of the evidence introduced by appellant on the subject of benefits and damages and all the arguments urged by it in support of its claim in this regard should have been urged at the time the plans were presented originally for the organization of this district and before the order was entered organizing the district; that those plans plainly showed that the district intended to construct its main channel across the right of way of the railroad company at the location of the wooden trestle; that the report of the commissioners in organizing the district clearly showed that they did not intend to pay anything in damages to the railroad company

for the location and construction of the main channel at
this point; that the objections of the railroad company to
the organization of the district at that time were overruled
by the county court and affirmed by this court in *Hans-
meyer* v. *Indian Creek Drainage District,* 284 Ill. 458, and
that on that account it is estopped from raising the ques-
tion of damages at this time; that the argument of appel-
lant and its evidence in effect was an attempt to show that
the plan of the drainage district to build its main channel
across the railroad right of way at the trestle was im-
practicable and unwise, and to show that the most feasible
plan for constructing the main channel across the railroad,
in order to get proper drainage for the surrounding terri-
tory, would have been to construct the main channel across
the right of way of the railroad company at the present
location of its steel bridge across the original natural chan-
nel of Indian creek. Counsel further argue that while it
may be conceded that the question of the proper place to
locate the main channel of the ditch was not argued or
decided either by the trial court or the Supreme Court at
the organization of the district, yet such question might,
and should, have been raised when the hearing was had
before the county court on the organization of the district
under the reasoning of this court in *Bacon* v. *Reichelt,* 272
Ill. 90, and *Harvey* v. *Aurora and Geneva Railway Co.* 186
id. 283; that not having been raised then it cannot be raised
later in any of the court proceedings that have to do with
the construction of the main channel of the drainage dis-
trict. They say in this connection in their brief: "If ap-
pellant expected to receive damages for the construction of
the new bridge at the trestle it should have presented its
claim when the report was under consideration." With this
contention we cannot agree. In discussing the provisions
of the Levee Drainage act with reference to the proper
method of finding damages and the authority of the com-
missioners as to such damages, this court said in *Michigan*

*Central Railroad Co.* v. *Spring Creek Drainage District,*
215 Ill. 501, on page 504: "Section 10 provides that if
the commissioners shall find, upon such investigation, that
the cost, expense and damages are more than equal to the
benefits they shall be so reported and the proceedings shall
be dismissed at the cost of the petitioners. The report
made by the commissioners, under which appellee seeks to
conclude appellants as to the damages, was made under said
paragraph 4 of section 9, and was merely for the purpose
of informing the commissioners and the court as to whether
the cost, expenses and damages were more than equal to
the benefits, so that the proceedings might be dismissed if
found necessary. This report is in no way conclusive as
to any of the matters contained in it, but it is a mere esti-
mate as to the probable cost, expense and damage occa-
sioned by the proposed work. As the work progresses the
items as estimated may be increased or diminished. The
report of the commissioners that there would be no dam-
age to appellants' land could not deprive them of the right
to have that question tried by a jury authorized by the con-
stitution. To hold otherwise would be to say that an un-
authorized body could determine the question of damages
by simply reporting that there would be no injury." This
court sanctioned this doctrine in the later case of *Sny Island
Drainage District* v. *Shaw,* 252 Ill. 142.

Under these decisions appellant had the right to offer
any proper evidence regarding damages to its property by
the proposed construction of the drainage canal across its
right of way. This evidence, however, ought to be re-
stricted to the question of damage to appellant's property
by the proposed work. Whether the proposed plan of con-
struction is the best and most feasible for the purpose of
taking care of the drainage of this territory is not a ques-
tion for the jury but is a question for determination by the
court. The only question, under this statute, to be submit-
ted to the jury is "the amount of benefits and damages

and the proportionate share of the cost" of the work. (*Inlet Swamp Drainage District* v. *Gehant,* 284 Ill. 180.) Whether the route proposed is the most feasible route was not presented to the trial court for consideration and is therefore not before this court. We will consider the question of damages as though the proposed route were the most feasible.

Having determined that the most feasible and practicable route for the proposed channel is through appellant's right of way at the location of the wooden trestle at the north edge of the valley, appellee contends that under the provisions of sections 55 and 56 of the Levee act appellant must bear all the expense growing out of the necessary elevation of tracks, building of bridge and interruption of traffic, and that appellee is in no way liable to it for damages. Section 56 provides: "When any ditch or drain or other work of enlarging any channel or water-course is located by the commissioners on the line of any natural depression or water-course, crossing the road of any railroad company where no bridge or culvert or opening of sufficient capacity to allow the natural flow of water of such ditch or water-course, is constructed, it shall be the duty of the commissioners to give notice to such railroad company to construct or enlarge such bridge or culvert or opening in the grade of such road, for such ditch or ditches or other work, of the dimensions named in such notice, within twenty days from the service thereof." Section 55 provides that a railroad shall at its own expense construct, erect or repair any bridge crossing any ditch or drain constructed on the line of any natural depression, channel or water-course. (Hurd's Stat. 1917, p. 1107.)

The photographs, maps and plat in the record show that the valley from the village of Arenzville south to the creek is practically level. The territory contains slight depressions and ridges, but the elevation of the highest point above the lowest point is not more than five feet. One of

these depressions is at the point where appellant has substituted the wooden trestle for its dirt embankment and has left the opening under the tracks for the free passage of flood waters. It is contended by appellee that this is a natural depression within the meaning of sections 55 and 56 of the Levee act, and that appellant is therefore entitled to no damages for expense arising out of the construction of the proposed drainage canal. Appellee even goes so far as to contend that all of Indian creek valley is a natural water-course and that the commissioners have a right to locate the proposed ditch at any point between the bluffs that they deem most feasible, and that when so located the railroad company must construct a bridge and bear whatever other expense is necessary to care for the damage caused by the location of the drainage canal. We can not assent to this construction of the statute. The natural water-course of a valley is the place where the water flows according to nature, and a natural depression contemplated by the statute is not any low place in the valley where water would accumulate or flow when in flood time water has spread over all the valley, but it is that lowest point in the valley where the natural drainage takes the water flowing from the dominant to the servient lands. *People* v. *Chicago and Eastern Illinois Railroad Co.* 262 Ill. 492.

Appellee relies for an affirmance of this judgment on our holding in *Dettmer* v. *Illinois Terminal Railroad Co.* 287 Ill. 513. In the *Dettmer case* the railroad company filled up the old channel of Cahokia creek and cut a new channel connecting the two points of a horeshoe bend and constructed its bridge over this new channel. The drainage commissioners surveyed their ditch to pass through the railroad at the point where the old channel of Cahokia creek cut the right of way. We held that inasmuch as the railroad company had the right to change the channel of the stream when it was done entirely upon its own land and without prejudice to the legal rights of upper or lower land

owners, the commissioners would be required to construct their ditch through the railroad company's artificial channel under its bridge if they could obtain an efficient system of drainage for their district by so doing. We held further that if it was not possible for them to obtain such a system of drainage then they had the right to construct their ditch through the old channel of the creek, in which case the railroad company would have to remove the obstructions it had placed there and put in a new bridge at its cost. The facts in the *Dettmer case* are just the reverse of the facts in this case. In this case the railroad company did not straighten the creek and make an artificial channel, but it constructed its railroad leaving drainage conditions as it found them. It built its bridge over the creek at the point where it flowed at the time the government survey was made. In building this bridge it was necessary for the railroad company to make it sufficient to care for the waters that are brought to it within the banks of the creek and all of the flood waters that will naturally come to it. Many general propositions stated in the *Dettmer case* are applicable to this case, but the decision there is in no way controlling here.

The waters of Indian creek do not naturally flow along the north side of the valley and under the railroad at the point of the wooden trestle, and the record shows that in order to divert these waters through that point it will be necessary to construct a channel 13½ feet deep. The railroad company must provide and maintain a bridge across the natural outlet for the waters of Indian creek valley of sufficient capacity and length to carry all the waters which naturally flow in that direction, and if it has not so provided it can be compelled to perform that duty. When it has made ample provision to care for the natural flow of water, accelerated by improved drainage methods in the territory, which in a state of nature drains or flows in the natural water-course, it has fulfilled its obligation and can

not be compelled to do more at its own expense. The expense of this new bridge, track elevation, etc., is not occasioned by any failure of appellant to discharge its duty by the construction of bridges of such capacity to afford ample outlet for the waters which naturally flow in that direction, but is occasioned solely by the construction of a new artificial channel which is intended to take the place of the creek through which such waters formerly flowed. All this expense is occasioned by the determination on the part of appellee to abandon the natural water-course and to construct a new one. It has the right to do this, but if it desires to adopt such a course it must bear the additional expense occasioned by so doing. (*East Side Levee and Sanitary District* v. *East St. Louis, Columbia and Waterloo Railway Co.* 279 Ill. 362.) Railroad companies will be compelled to enlarge bridges over natural water-courses when such channel is required to be enlarged for navigable, drainage or other purposes, but will not be compelled to build or enlarge such bridges when an entirely artificial channel is constructed. (*East Side Levee and Sanitary District* v. *East St. Louis and Carondelet Railway*, 279 Ill. 123.) Where the proposed change in drainage will increase the burdens imposed by law upon a railroad company, that will be the taking or damaging of its property for public use and compensation must be made therefor. *Cache River Drainage District* v. *Chicago and Eastern Illinois Railroad Co.* 264 Ill. 97.

The court gave to the jury the following among other instructions:

"You are further instructed that if you find, from a preponderance of the evidence in this case, that the main drain of Indian Creek Drainage District No. 2 has been so located that it will pass through the right of way of the Chicago, Burlington and Quincy Railroad Company at a point where there is a natural depression, channel or water-course, and where there is no opening of sufficient capacity

to allow the passage of all the waters of Indian creek, that then said railroad company is not entitled to any damages for expenses which it may be forced to incur on account of such construction; and in making an assessment of benefits against said railroad company, if from the evidence you find said railroad company has been benefited, the sum assessed against the same shall not include the expense of constructing, erecting or repairing any bridge, embankment or grade, culvert or other work of such road constructed on the line of any natural depression, channel or water-course nor loss occasioned by delay of trains, but in such case the corporate authorities of such road or railroad are required, at their own expense, to construct such bridges, culvert or other work, or to replace any bridges or culvert temporarily removed by the commissioners in doing the work of said district."

In view of what we have said, this instruction, and others of like character, were misleading and should not have been given.

Instruction No. 7 given on behalf of appellee reads:

"You are further instructed that the jury are the sole judges of the weight to be given to the testimony of the several witnesses and the weight to be attached to your view of the premises and as to whether you will attach greater weight to the testimony of the witnesses or to your view of the premises, but it is the duty of the jury to consider all of the evidence offered in the cause, including your view of the premises."

This instruction was an invitation to the jury to ignore the testimony of the witnesses and to base their verdict upon their own inspection of the premises, provided, only, they were of the opinion that such inspection furnished a more reliable basis for their decision than would the evidence of the witnesses. There is no basis in law for such an instruction and it was error to give it. *Chicago and*

*State Line Railway Co.* v. *Mines,* 221 Ill. 448; *South Park Comrs.* v. *Ayer,* 237 id. 211.

There were other errors in the court's rulings on admission of evidence and in the giving and refusing of instructions, but these errors arose because the case was tried on the wrong theory, and as they are not likely to occur on a new trial of the cause they will not be further considered.

The judgment is reversed and the cause is remanded to the county court of Morgan county for further proceedings in accordance with the views expressed in this opinion.

*Reversed and remanded.*

---

(No. 13600.—Reversed and remanded.)
THE PEOPLE *ex rel.* E. G. Williamson, County Collector, Appellee, *vs.* J. E. NOYES *et al.* Appellants.

*Opinion filed December 21, 1920.*