(No. 11386.—Reversed and remanded.)

THE EAST SIDE LEVEE AND SANITARY DISTRICT, Appellant, *vs.* THE EAST ST. LOUIS AND CARONDELET RAILWAY, Appellee.

*Opinion filed June 21, 1917.*

1. SANITARY DISTRICTS—*under the act of 1907 a sanitary district must pay for property taken in crossing railroad.*   Section 21 of the act of 1907, relating to sanitary districts in territories subject to overflow, gives a district power to compel a railroad company to permit it to cross and to require the company to elevate its tracks to conform to the grade of the levee or other work intersecting the tracks, but does not provide that such company shall be required to do this without compensation for the property taken or damages caused by the work.

2. POLICE POWER—*police power defined.*   The police power is that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society, being co-extensive with self-protection and not inaptly termed the "law of overruling necessity."

3. SAME—*police power is inherent in State government.*   The police power is a necessary attribute of every sovereign State, is inherent in the States and is not a grant derived from or under a written constitution.

4. SAME—*courts must guard the exercise of police power.*   The legislature determines when the exigency exists for the exercise of the police power but it is for the courts to determine what are. the subjects of such power and whether a statute has a reasonable relation thereto, and if there is no real or substantial relation between the avowed objects of the law and the means devised for attaining them, courts may interfere for the protection of rights injuriously affected.

5. SAME—*owner of property must so use it as not to interfere with welfare of community.*   A citizen must so use his property as not to interfere with the reasonable enjoyment and use by others of their property nor with the general welfare of the community in which he lives, and this last duty may be regulated by the police power.

6. RAILROADS—*extent to which legislative power is greater over railroads than over other private corporations.*   Legislative power over railroad corporations is greater than over purely private corporations with respect to the public duties and character of rail-

road companies, but it is not greater over such company's private rights than it is over the rights of strictly private corporations or natural persons, and railroad property is within the constitutional protection, the same as that of private corporations.

7. SAME—*a railroad company cannot be compelled to construct bridge over artificial channel.* A railroad corporation will be compelled to enlarge its bridge only when the channel of a natural water-course is required to be enlarged for navigable or other purposes and will not be compelled to construct a bridge at its own expense over an artificial channel being constructed by a sanitary district. (*Sanitary District* v. *Chicago and Alton Railroad Co.* 267 Ill. 252, followed.)

8. SAME—*when railroad company should not be allowed damages for expense of constructing a double-track bridge.* Where a sanitary district is about to construct a levee and drain across a single-track railroad the railroad company should not be allowed damages for the expense of constructing a double-track bridge, even though the company has planned for the additional track, as such damages are too remote and speculative.

APPEAL from the County Court of St. Clair county; the Hon. JOSEPH B. MESSICK, Judge, presiding.

THOMAS E. GILLESPIE, (A. H. BAER, and SCHAEFER & KRUGER, of counsel,) for appellant.

T. M. PIERCE, and KRAMER, KRAMER & CAMPBELL, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This was a proceeding brought by the appellant sanitary district in the county court of St. Clair county to condemn certain property of the appellee railway in that county. The case was submitted to the trial court on a stipulation of facts, a jury being waived. Judgment was entered in favor of appellee in the sum of $78,910, and this appeal followed.

The petition for condemnation alleges the appellant district, by ordinance duly passed and in accordance with plans

and specifications attached to said petition, contemplated the improvement of Prairie du Pont creek by the construction of a main channel from and connected with said creek at the easterly boundary line of the appellant district to a connection with what is known as the Cahokia chute of the Mississippi river, and also the construction along the northerly line of said channel of a levee; that in the construction of said improvement it was necessary to cross the right of way of the appellee railway with said channel and said levee, and asked that appellant be allowed to take a strip of ground across appellee's right of way one hundred feet in width for the purpose of constructing and maintaining the water channel and that compensation be fixed for such taking. Appellee filed a cross-petition, which set forth that the improvement contemplated the construction of an artificial waterway across the right of way of appellee where there was not then, and never had been, any water-course, and at a place where there were no embankments except the railroad embankment and tracks of appellee; that the construction of this waterway would require the building of a railroad bridge across it; that the construction of the embankment would require appellee to raise its embankment and tracks and re-ballast the same, and that the construction of said bridge and raising of the embankment would require it to incur costs and expenses in detouring its trains while such changes were being made. The cross-petition further set forth the cost of construction of the bridge and the maintenance of the same, the cost of the elevation of the embankment and tracks and the cost and expense of detouring traffic, and alleged that appellee would be damaged by being required to meet these changed conditions. The stipulation of facts and the specifications show that it was intended to divert the natural water-course of Prairie du Pont creek by the substitution of another channel, and proposed to construct an embankment along the side of said new channel for the purpose of furnishing to

the appellant district levee protection; that at the place of crossing there is now no natural water-course, and no railroad bridge or structure except the railroad embankment and tracks of appellee.

Counsel for appellant first contend that as it is a municipal corporation organized for the sole and exclusive purpose of exercising certain public power and duties assignable wholly to the police power of the State, the appellee railway company is obliged to elevate its tracks and provide sufficient openings for drainage under such police power, and is therefore not entitled to any judgment in its favor for damages because this channel is to be constructed across its right of way or for the construction of the bridge or the elevation of its tracks. Counsel for appellee argue that the ruling of this court in *Sanitary District* v. *Chicago and Alton Railroad Co.* 267 Ill. 252, practically disposes of this question contrary to appellant's contention. Counsel for appellant concede that some of the reasoning, at least, in the last cited case is not in harmony with their contention, but they insist that case can, and should in fairness, be distinguished, because that case was practically disposed of, they argue, upon the ground that the Sanitary District of Chicago had not been authorized by statute to construct channels for sanitary purposes across railroad rights of way and to require the expense of elevating tracks and building bridges to be borne by the railroad companies, while section 21 of the act under which this appellant district was organized does authorize this sanitary district to require railroad companies to pay for the construction and elevation of their tracks and for building bridges rendered necessary by the work of the sanitary district.

Section 21 of this act reads: "When necessary for or in connection with any of the purposes authorized by this act, the board of trustees may require and compel any steam, electric or other railroad company to raise its tracks to conform to the grade of any levee, or other work inter-

secting or crossing the same, which may, at any time, be established by such sanitary district, and where such tracks run lengthwise upon or along the line of any such improvement, to require and compel such railroad companies to elevate the same to the surface thereof. Also to require and compel any such railroad companies to maintain and keep open and in repair, ditches, drains, sewers and culverts, along and under their tracks, so that filth or stagnant pools of water shall not stand upon their right of way and grounds, and so that the drainage of adjacent property shall not be impeded or interfered with." (Hurd's Stat. 1916, p. 1067.)

In order to give the construction intended by the legislature to this section it must be read in connection with the rest of the act. Section 18 of the act provides, among other things, that whenever it is necessary to take or damage private property for right of way or other purposes, for any public work authorized by the act, the sanitary district may cause compensation therefor to be ascertained, and acquire the same in the manner provided under the Eminent Domain act. Section 15 of the act also provides that the sanitary district may acquire, by purchase, condemnation or otherwise, any and all real and personal property, rights of way and privileges, either within or without its corporate limits, required for its corporate purposes, provided all moneys for the purchase or condemnation of any property shall be paid before possession is taken or any work done on the premises damaged by the construction of any levee, outlet or other work. Section 20 provides that "whenever it shall be necessary to take or use, for any of the purposes contemplated in this act, any portion of any railroad right of way, or property occupied by the track or tracks of any steam, electric or other railroad company * * * in the operation or use of which the public has an interest, only such easement, use or rights therein shall

be acquired as are necessary for the purpose intended."
(Hurd's Stat. 1916, p. 1066.)

We have compared the provisions of this act with the
act under which the Sanitary District of Chicago was or-
ganized, with reference to the condemnation of property,
and are of the opinion that the legislature did not intend
to grant any greater powers under this act than by said
Sanitary District of Chicago act as to condemning property
across railways. We think a fair construction of section 21,
read in the light of the whole act, gives the sanitary dis-
trict power to compel railways to permit it to cross and to
require them to elevate their tracks to conform to the grade
of the levee or other work intersecting or crossing the same,
but does not provide that such railroads should be required
to do this without the sanitary district paying for the prop-
erty taken or for damages caused by the work so being
constructed.

Counsel for appellee furthermore insist that if the con-
struction be placed upon said section 21 as contended for
by counsel for appellant the section is unconstitutional, in
that it would require the taking of property without due
process of law. That question, we think, is practically set-
tled by the reasoning of this court in *Sanitary District* v.
*Chicago and Alton Railroad Co. supra,* but counsel for ap-
pellant have argued so exhaustively and with such earnest-
ness on this question that we deem it proper to review the
authorities as to the right of appellant to require appellee
to elevate its tracks and construct this bridge without com-
pensation, under the police power of the State.

The police power has been defined by this court as that
inherent and plenary power in the State which enables it
to prohibit all things hurtful to the comfort, safety and
welfare of society. It is co-extensive with self-protection
and is not inaptly termed the "law of overruling necessity."
(*Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill.
191.) The extent of this power has never been defined with

precision.  Indeed, it cannot be accurately defined, and the
courts have not been able or willing definitely to circum-
scribe it.  (*Pumpelly* v. *Green Bay Co.* 13 Wall. 166.)
The police power is a necessary attribute of every sovereign
State.  It is inherent in the States of the American Union
and is not a grant derived from or under a written consti-
tution.  The very existence of government depends upon it,
as well as the security of social order, the life and health
of the citizen, the enjoyment of private and social life and
the beneficial use of property.  (6 R. C. L. 183.)  The
boundary line which divides the police power of the State
from the other functions of government is often difficult
to discern.  The limitations of the power have never been
drawn with exactness.  It has been said that it is much
easier to perceive and realize the existence and sources of
this power than to mark its boundaries or prescribe limits
to its exercise.  (*State* v. *Gurry,* 121 Md. 534; *Smiley* v.
*MacDonald,* 42 Neb. 5.)  Police regulations and power "are
based chiefly on the Latin maxims, *salus populi est suprema
lex,*—the welfare of the people is the first law,—and *sic
utere tuo ut alienum non lædas,*—so use your own property
as not to injure the rights of another."  (3 McQuillin on
Mun. Corp. sec. 891.)  "Whatever differences of opinion
may exist as to the extent and boundaries of the police
power and however difficult it may be to render a satis-
factory definition of it, there seems to be no doubt that it
does extend to the protection of the lives, health and prop-
erty of the citizens and to the preservation of good order
and the public morals."  (*Beer Co.* v. *Massachusetts,* 97
U. S. 25.)  "The police power of the State extends only
to such measures as are reasonable, and the general rule
is that all police regulations must be reasonable under all
circumstances.  In every case it must appear that the means
adopted are reasonably necessary and appropriate for the
accomplishment of a legitimate object falling within the
domain of the police power.  A statute, to be within this

279 — 9

power, must be reasonable in its operation upon the persons whom it affects and not unduly oppressive." (6 R. C. L. 236.) If the means employed have no real, substantial relation to public objects which government may legally accomplish,—if they are arbitrary and unreasonable, beyond the necessities of the case,—the judiciary will disregard mere forms and interfere for the protection of rights injuriously affected by such illegal action. The authority of the courts to interfere in such cases is beyond all doubt. (*Minnesota* v. *Barber,* 136 U. S. 313.) "Upon the general subject there is no real conflict among the adjudged cases. Whatever conflict there is, arises upon the question whether there has been or will be in the particular case, within the true meaning of the constitution, a 'taking' of private property for public use. If the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the public use and a right to compensation on account of such injury does not attach under the constitution." *Chicago, Burlington and Quincy Railway Co.* v. *People,* 200 U. S. 561.

Every person is bound to use his property so as not to interfere with the reasonable enjoyment and use by others of their property and not to interfere with the general welfare of the community in which he lives. This last duty may be regulated by the police power. "Whatever restraints the legislature imposes upon the use and enjoyment of property within the reason and principle of this duty the owner must submit to, and for any inconvenience or loss which he sustains thereby he is without remedy. It is a regulation and not a taking; an exercise of police power and not of eminent domain. But the moment the legislature passes beyond mere regulation and attempts to deprive the individual of his property, or of some substantial interest therein, under pretense of regulation, then the act becomes one of eminent domain and is subject to the ob-

ligations and limitations which attend an exercise of that power." (1 Lewis on Eminent Domain,—3d ed.—sec. 6.) The citizen owns his property absolutely. It cannot be taken from him, for any private use whatever, without his consent, nor can it be taken for any public use without compensation; still, he "owns it subject to this restriction, namely: that it must be so used as not unreasonably to injure others, and that the sovereign authority may by police regulations so direct the use of it that it shall not prove pernicious to his neighbors or the citizens generally. * * * This power to restrain a private injurious use of property is essentially different from the right of eminent domain. It is not a taking of private property for public use but a salutary restraint on a noxious use by the owner." (1 Dillon on Mun. Corp.—5th ed.—sec. 301.) "Any accurate statement of the theory upon which the police power rests will render it apparent that a proper exercise of it by the State cannot come in conflict with the provisions of the constitution of the United States. If the power extends only to a just regulation of rights with a view to the due protection and enjoyment of all and does not deprive anyone of that which is justly and properly his own, it is obvious that its possession by the State and its exercise for the regulation of the property and actions of its citizens cannot well constitute an invasion of national jurisdiction." (Cooley's Const. Lim.—7th ed.—832.)

There are limitations upon the police power. Legislative judgment is not conclusive. The legislative department may determine when the exigency exists for the exercise of the police power, but it is for the courts to determine what are the subjects for the exercise of this power, whether the act has a reasonable relation to that power, and whether there is any real or substantial relation between the avowed objects of the law and the means therein devised for attaining those ends. (*People* v. *Steele*, 231 Ill. 340; Tiedeman on Limitations of Police Power, sec. 194.) "A statute pro-

fessing to make a police regulation, and assuming to be based upon that power, is invalid if it be clear that the subject is not one within the scope of that power." (2 Elliott on Railroads,—2d ed.—sec. 665.) "Even the police power, comprehensive as it is, has some limitations. It cannot be held to sanction the taking of private property for public use without making just compensation therefor, however essential this might be, for the time, to the public health, safety, etc. And upon like principle a purely public burden cannot be laid upon a private individual except as authorized in cases to exercise the right of eminent domain or by virtue of proper proceedings to enforce special assessments or special taxation. The drainage of malarial swamps would surely largely contribute to promote the public health, but could it be contended that therefore the burden of such drainage may be laid upon some single person to be arbitrarily selected or upon those who happen to own the adjacent dry land, in disregard of the principles applicable to special assessments and special taxation?" *City of Chicago* v. *O'Brien,* 111 Ill. 532. See, also, *City of Belleville* v. *Turnpike Co.* 234 Ill. 428.

Counsel for the appellant concede that the doctrine just quoted applies with force as to property owned by private individuals, but they argue that the power to regulate railroad corporations is greater than the power to regulate strictly private corporations or individuals, citing in support of this doctrine the reasoning of this court in *City of Chicago* v. *Chicago Union Traction Co.* 199 Ill. 259, and 2 Elliott on Railroads, (2d ed.) sec. 659. This last authority, in the same section referred to, also states that as railroad corporations are in a sense public corporations, legislative power over them is greater than if they were purely private corporations. Yet the legislative power is only greater in so far as a railroad company is public, and on principle it is not greater over such company's private rights,—such, for instance, as contract and property rights not affecting

public duties,—than is its power over strictly private corporations or natural persons. The property of railroads is within the constitutional protection, the same as that of private corporations. "Where the subject of the legislation is the public part or element of a corporation, the legislative authority does not, as we have elsewhere indicated, rest entirely upon the police power, but rather upon the right to regulate the acts, business and duties of a public corporation. The power of the legislature to make regulations concerning the public rights, duties and acts of railroad companies is analogous to that which it possesses over municipal or governmental corporations but is by no means so broad or comprehensive as that power. * * * Under the power to control the public part or element of a railroad company many important duties may be imposed upon it and many requirements be made that could not be made or imposed in matters of strictly private rights." (2 Elliott on Railroads,—2d ed.—sec. 662.) The author last quoted intimates in section 661 that burdens are frequently imposed upon railroad companies which, in effect, constitute a taking of property without compensation; that the constitutional inhibitions directed against local and special legislation are sometimes evaded by holding that the peculiar nature of a railroad corporation justifies particular legislation and is a reasonable basis for classification, and that things are done by indirection in many instances which would unhesitatingly be overthrown if done directly.

The question then resolves itself here as to whether this elevation of the tracks and the building of this bridge over the channel come within the regulation of the railroad property or is the taking of such property. Is the building of this new channel and requiring the appellee railway to elevate its tracks and construct a bridge over said channel of Prairie du Pont creek only incidental to the exercise of governmental power for the public good, and does such construction of such channel and the building of such bridge

bear a real and substantial relation to the public objects sought to be obtained? Or is the requirement of elevating the tracks and building the bridge at its own expense an arbitrary and unreasonable requirement as against said railway company, bearing no proper relation to the end sought to be accomplished, and therefore the taking of its property under the guise of police regulations?

Counsel for appellant argue that the case is not different in kind, even if it is in degree, from requiring railroad companies to elevate their railroads over public highways on land, and they cite here, as was cited in *Sanitary District* v. *Chicago and Alton Railroad Co. supra,* certain decisions of the Minnesota courts which tend to uphold their contention in this regard. We held in *Sanitary District* v. *Chicago and Alton Railroad Co. supra,* that the Minnesota cases were not controlling or binding here but were in conflict with the reasoning of the decisions of this court. The great weight of authority in this and other jurisdictions is that a railroad company is only responsible for injuries to the property overflowed by water when it obstructs the flow of such water in a natural water-course, or surface water in the direction it would naturally flow. (2 Elliott on Railroads,—2d ed.—secs. 1057*d,* 1057*j,* incl.) And this court has held that, even as to a natural channel, a drainage district for agricultural purposes cannot, under the police power of the State, require a railroad company to build a larger bridge across such natural channel when such bridge is rendered necessary by the district causing the water to flow in a direction opposite to that in which it naturally flows in such water-course and thereby increasing the volume of the water. (*People* v. *Chicago and Eastern Illinois Railroad Co.* 262 Ill. 492.) The basis, substantially, of the holding of all the courts in all the cases heretofore decided requiring railroads to enlarge the channels of natural water-courses is, that the railroad company took its right of way across such channel with the implied understanding

that it was to so conduct its business as to meet all chang-
ing conditions required by the public welfare of society and
civilization.    It was clearly upon this basis that the high-
est court of the country in *Chicago, Burlington and Quincy
Railway Co.* v. *People, supra,* held that the Burlington Rail-
road Company was required to enlarge its bridge over the
natural water-course in Rob Roy creek, saying on page 589 :
"It would seem legitimately to follow that the railroad com-
pany, in providing a passageway for the slough, was bound
to anticipate and provide for any such legal increase of the
waterflow."    Also page 586 :    "When the railroad company
laid the foundations of its bridge in Rob Roy creek it did so
subject to the rights of the public in the use of the water-
course, and also subject to the possibility that new circum-
stances and future public necessities might, in the judgment
of the State, reasonably require a material change in the
methods used in crossing the creek with cars."    The court in
that case only held the railroad company liable for the cost
of the new bridge and for removing the timbers and stone
in the old bridge. and the culvert, and held the drainage
authorities liable for the removal of the soil in order to en-
large, deepen and widen the channel.    Three of the judges
specially concurred in the main conclusion reached in that
opinion but specifically argued that the drainage authorities
were not only liable for widening and deepening the chan-
nel by the removal of the original earth, but as well for the
removal of all other substances lawfully put in place of the
original earth.    The decision was by a divided court on
the main question, a very vigorous dissent being filed by
Mr. Justice Brewer.    This decision by the highest court of
the land is perhaps the leading case in any court on the
question, and it is very clear that the right to require the
railroad to enlarge the bridge was only upheld on the ground
that the bridge was over a natural water-course and that the
railroad company was not liable for enlarging the channel.

It would seem necessarily to follow from this reasoning that the railway company could not be held liable in this case, where the channel was entirely new, for the digging of any of the channel, and that it would also logically follow that the railroad company could not be held liable for building the bridge over a purely artificial channel. The conclusion that railroad corporations will only be compelled to enlarge bridges over natural water-courses when such channel is required to be enlarged for navigable or other purposes and not when an entirely artificial channel is constructed, is further strengthened by the reasoning of the courts in *West Chicago Railroad Co.* v. *City of Chicago,* 201 U. S. 506, *Union Bridge Co.* v. *United States,* 204 id. 364, *Monongahela Bridge Co.* v. *United States,* 216 id. 177, and *Hannibal Bridge Co.* v. *United States,* 221 id. 194. Even in the elevation of tracks over highways on land this court has not held railway companies responsible for all the expenses connected with such elevation and restoring the highway to a proper condition for travel, on the ground that all such expense did not bear a substantial relation to the end sought to be accomplished and was not incidental to the exercise of the governmental power for the public good. (*People* v. *Illinois Central Railroad Co.* 235 Ill. 374; *City of Chicago* v. *Pennsylvania Co.* 252 id. 185; *City of Chicago* v. *Pittsburgh, Ft. Wayne and Chicago Railway Co.* 247 id. 319.) The validity of a police regulation, however established, "must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose." (*Chicago, Burlington and Quincy Railway Co.* v. *People, supra,* p. 592.) As was said by this court in *Sanitary District* v. *Chicago and Alton Railroad Co. supra,* in commenting upon two cases there cited, (p. 259,) the reasoning of such cases on "the right of municipal authorities to compel a railroad corporation to bear the expense of building a bridge over a canal or ditch

(not a natural water-course) not in existence at the time the railroad was constructed are not in accord with the law in this State,"—citing authorities. At the time this railroad was constructed there could be no reasonable anticipation that this artificial drainage channel would be required at this point for the public health of the people of that locality.

It seems to us, under any fair line of reasoning and by the great weight of authority on this question, that to require the railroad company to construct the elevation of its tracks and build the bridge here at its own expense over the artificial channel would be the taking of its property and not a regulation of the use of its road. Therefore the trial court rightly held that appellant should pay for the cost of elevating the tracks for excavating the channel and building the bridge across the channel, to the extent that the bridge was required for the railroad use at the time the condemnation proceedings were instituted.

The further question is raised by the appellant as to whether the trial court ruled correctly in holding that the appellee company was also entitled to recover damages for a double-track bridge and the elevation of its embankment for a double track when that track was not in operation at the time the condemnation proceedings were instituted. The record shows that in January, 1912, the appellee company decided to construct a second main track on its right of way from East St. Louis to Falling Springs Junction, on said railway, between which two points this artificial channel of the appellant sanitary district crosses the railroad right of way, and that it had begun the construction of the embankment and this second track and had constructed between the points above named during 1912, 1.19 miles, 1913, .81 mile, 1914, .33 mile, and during 1916, .41 mile, but that all portion of the second track that was constructed in 1916 was constructed after June 16, 1916, and no construction had been commenced at the place of the crossing of this channel. The trial court allowed appellee for the

construction of a double-track bridge across said new chan-
nel and for the cost of keeping in repair said double-track
bridge and the foundation thereof.  This court, in discuss-
ing a similar question in *Sanitary District* v. *Chicago and
Alton Railroad Co. supra,* said (p. 265) : "The measure
of damages in a condemnation matter should be based upon
the market value of the property for the best and highest
use to which it is adapted, [citing authorities,] and all facts
as to the condition of the property, its surroundings, im-
provements and capabilities may be shown and considered
in estimating its value.  But proof must be limited to show-
ing the present condition of the property and the use to
which it is naturally adapted.  It is not competent for the
owner to show to what use he intended to put the property
nor what plans he had for its improvement, nor the prob-
able future use of the property, in so far as such plans may
affect the damages to be allowed,'' quoting then with ap-
proval from 2 Lewis on Eminent Domain, (3d ed.) sec.
709 : "Nothing can be allowed for damages to an intended
use."

   Counsel for appellee cite, as upholding the decision of
the lower court, the decisions of this court in *Illinois Cen-
tral Railroad Co.* v. *City of Chicago,* 169 Ill. 329, and
*Sexton* v. *Union Stock Yards Co.* 200 id. 244.  This court
in *Sanitary District* v. *Chicago and Alton Railroad Co. su-
pra,* referred to the doctrine laid down in the *Sexton case,*
holding, in effect, that that case only laid down the rule
that the plans for the future could be shown to illustrate
the uses to which the property was adapted, but that such
evidence was inadmissible to enhance the damages.

   Counsel for appellee argue that in the case of *Sanitary
District* v. *Chicago and Alton Railroad Co. supra,* it was dis-
tinctly stated that in that case there was no proof that the
railroad company had plans for additional railroad tracks,
and that in this case there was proof appellee had such plans
and had actually taken steps to carry them out.  We think,

however, under the doctrine laid down by Lewis on Eminent Domain and quoted with approval by this court in said case, that nothing should be allowed for damages for intended use for the proposed double-track bridge. The rule in this and most other jurisdictions is that the damages must be estimated as of the time the petition for condemnation is filed, and that the damages for future use, even though plans have been made by the railroad company, are too remote and speculative to be considered.

The judgment of the trial court will therefore be reversed and the cause remanded, with directions to allow the costs of elevating the tracks, excavating the channel and building the bridge for the single-track railroad, but to deny damages for the building of the embankment for the double-track railroad and the building and keeping in repair of the bridge for the same.

*Reversed and remanded, with directions.*

---

(No. 11396.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EARNEST WALLACE, Plaintiff in Error.

*Opinion filed June 21, 1917.*