[Civ. No. 16932. Second Dist., Div. Two. Oct. 17, 1949.]

THE CITY OF LOS ANGELES, Appellant, v. HECTOR GEIGER et al., Respondents.

Ray L. Chesebro, City Attorney, Charles F. Reiche, Assistant City Attorney, Arthur Wm. Green and Spencer L. Halverson, Deputy City Attorneys, for Appellant.

C. R. Montgomery, George C. Hadley, R. B. Pegram and Thomas G. Baggot as Amici Curiae on behalf of Appellant.

Francis H. Lindley for Respondents.

WILSON, J.—Plaintiff has appealed from that portion of an interlocutory judgment awarding severance damages to defendants in an action for the condemnation of a strip of land to be used for the opening and extension of a freeway (a limited access highway) from Hollywood into San Fernando Valley.

The accompanying sketch (see next page) illustrates the relative locations of the several parcels of land that are to be discussed in the opinion. The diagram is not drawn to scale and does not indicate the various curves and angles in the boundaries of the lands involved or their dimensions.

At the date of filing the complaint defendants were the owners of Parcels 1A and 1B which at that time comprised one entire parcel consisting of approximately 150 acres of unsubdivided, undeveloped hill land. It was bounded on the south, a distance of approximately 5,000 feet, by the Pacific Electric Railway right of way (Parcel 2A), on the west by Lankershim Boulevard, and on the north and east by privately owned property not involved in this action. Parcel 3A extends along the southerly boundary of the railway right of way, and Parcel 3B is between Parcel 3A and Cahuenga Boulevard.

At the time the action was commenced and at the time of trial Parcels 3A and 3B were owned by persons other than defendants. The latter had no right of access of any character from their property (Parcels 1A and 1B) directly to Cahuenga Boulevard; defendants' land was separated from Parcel 3A by the railway right of way. There was no street, bridge or overpass across the railway right of way or across Parcels 3A and 3B and defendants had no easement or right of passage over the same and no agreement under which they could acquire such right. The only access to public highways from defendants' land was to Lankershim Boulevard along the westerly boundary of the property and to an unnamed street extending from its easterly boundary to Barham Boulevard. Cahuenga Boulevard could be reached by traveling over Lankershim Boulevard to Barham Boulevard.

Parcels 1A, 2A and 3A have been condemned in the instant action, and the railway tracks have been removed from Parcel 2A and relocated on another portion of the condemned land. Parcel 3B is owned as before the condemnation by persons other than defendants. After the land in question had been condemned and the freeway constructed defendants still had no direct access by street, subway, overpass or otherwise across the freeway or the railway right of way to Cahuenga Boule-

City of Los Angeles v. Geiger

This sketch is not drawn to scale. It is used only for the purpose of illustrating the location in relation to each other of the various parcels of land and streets referred to in the opinion. Each of the several parcels is irregular in width. Since their dimensions are not material to the decision the varying widths are not indicated.

vard, no provision having been made therefor in the condemna-
tion proceedings, and they had no right or easement from
the owners of Parcel 3B to cross such parcel.

The result of plaintiff's acquisition of the property by con-
demnation and the construction of the freeway is that the
distance from the southerly boundary of defendants' remain-
ing land (Parcel 1B) to Cahuenga Boulevard is much greater
than from the former southerly line of their property (the
southerly line of Parcel 1A) to the boulevard, and should an
overpass be constructed to provide access to the boulevard it
will be of greater length than would have been required for
crossing the railway right of way by reason of the necessity
of building also over Parcels 1A and 3A.

Defendants assume that had the condemnation proceedings
not been brought and the freeway constructed they would have
been able to obtain an easement from the Pacific Electric
Railway to build an overpass across its right of way and they
maintain that they are entitled to severance damages to their
remaining property in a sum equal to the amount which they
would be required to expend for an overpass from Parcel 1B
to Parcel 3B in excess of the cost of an overpass across the
railway right of way alone.

Adopting defendants' contention the court awarded them
severance damages in the sum of $64,471 of which $40,000
was allowed for the reason, as stated in the findings, that the
fair market value of the property "has been depressed by the
fact that because of the construction of the improvement the
building of a necessary or highly desirable access road into
said Parcel 1B at a point fairly or nearly central in respect to
the length of said parcel and by means of a possible and desir-
able overpass across the Pacific Electric Railroad right-of-
way [Parcel 2A] . . . and a road across" a portion of Par-
cels 3A and 3B "will be much more costly than would other-
wise have been the case," by reason whereof "the fair market
value of said Parcel 1B has been reduced to the extent of not
less than $40,000.00."

The court further found: "At the request of counsel for
plaintiff, who believe that the taking of an appeal will be
made more convenient and economical if their request is
granted, the Court makes the findings set forth in this para-
graph, although no issue has existed in respect to any of the
matters set forth in this paragraph, and the Court has not
made any finding or drawn any conclusion on any assumption

or hypothecation (sic) or finding contrary to or inconsistent with any finding set forth in this paragraph:

"At the time of the filing of the complaint in this action and the issuance of summons thereon and the recording of the Lis Pendens in reference thereto, the said defendant owners of Parcel 1B did not own or possess a right of access over and across the Pacific Electric Railroad right-of-way designated in said complaint as Parcel 2A, or any other right, title or interest thereto, or over and across the land described in said complaint in Parcel 3,A-1, 3,B-1 and 3,C-1, and 3,A-II, 3,B-II and 3,C-II or any other right, title and interest thereto, except as beneficiaries under a deed of trust, covering Parcels 3,A-II, 3,B-II, 3,C-II and 3,D-II, hereinafter referred to." (The latter parcels are not involved in this appeal.)

Plaintiff contends that since defendants had neither an easement over the railway right of way or the property owned by others (Parcels 3A and 3B) nor any agreement whereby they could have procured the same there was no physical disturbance of their property right, hence the award of $40,000 for "a possible and desirable overpass" was for a noncompensable, remote and contingent possibility which the court was without power to allow.

Plaintiff's appeal is from that portion of the judgment awarding the sum of $40,000 as severance damages for the purposes mentioned.

In support of the appeal plaintiff assigns (1) the insufficiency of the evidence to sustain the finding and judgment awarding the sum of $40,000 for the construction of "a possible and desirable overpass," (2) error in awarding such sum to defendants when no right owned or possessed by them had been taken or invaded, and (3) error in considering evidence admitted over plaintiff's objection that there was a probability or possibility that in the future defendants could or might obtain a right to pass over some portion of the land between their property and Cahuenga Boulevard and evidence relative to the cost thereof. Plaintiff's contentions may be condensed into one question, to wit, whether or not there has been some direct physical disturbance of a right enjoyed by defendants in connection with their property which gave additional value to it, and whether by reason of the severance and the construction of the improvement defendants have suffered a disturbance or invasion of such right whereby they have sustained a special damage to their remaining property.

Defendants' witnesses concerning severance damages testified that in their opinion the best method of developing Parcel 1B and to serve the persons who might reside thereon in the future would be to provide an overpass or bridge extending from such property over the railway right of way and an overpass or road across the intervening property to connect at grade with Cahuenga Boulevard, thereby providing a direct outlet to the boulevard and eliminating the circuity of travel to either Lankershim Boulevard or Barham Boulevard and thence south to Cahuenga Boulevard. The witnesses also testified concerning the difference between the cost of construction of an overpass across the 50-foot railway right of way and the cost of an overpass across the freeway 200 feet in width.

It was stipulated and the court found as above quoted that defendants never had a right of access over or easement to build a bridge across the railway right of way or an easement across or over the privately owned property (Parcels 3A and 3B) between the railway and Cahuenga Boulevard.

Witness Coffin testified that he knew defendants did not have an easement over the railway right of way or over the property between the railway and Cahuenga Boulevard for an overpass or roadway; nevertheless he secured cost estimates from bridge engineers for a traffic bridge crossing the railway right of way and the cost of roads extending from such possible bridge across privately owned property to Cahuenga Boulevard; he also secured the cost of a bridge across the 200-foot freeway "in the event that a permit could be secured from the city or the State Highway Department to secure similar direct access to Cahuenga Boulevard after the freeway was constructed . . ."; he "considered the attitude of Pacific Electric Railway officials in respect to a crossing by bridge or viaduct" above their right of way; he considered a conversation in which he was informed that the owners of Parcels 3A and 3B would give defendants permission to pass over the property if the need should ever arise; as a result of his studies he had formed an opinion as to whether or not the taking of Parcel 1A caused a severance damage to Parcel 1B and the amount thereof, stating his opinion as to such damage.

Witness Frisbie testified that in connection with considering the effect on defendants' land of the construction of the improvement he interviewed engineers and officials of the Pacific Electric Railway to determine whether an overpass could be obtained across the right of way; he took into consideration

the effect of the freeway and the fact that it was a nonaccess highway as against the effect of an ordinary street at grade; he stated that the natural and best outlet from defendants' property was by an overpass across the railway to Cahuenga Boulevard; he conferred with the Pacific Electric officials and found that such an overpass was feasible and that any "prospective buyer could reasonably assume that he would be able to get such an overpass."

Witness Schmutz, in arriving at an opinion with respect to the severance damages, considered "the attitude of the Pacific Electric Railway officials as regards the probability of acquiring an overhead crossing over the right of way," and that the severance damage "is due to the loss of access directly to Cahuenga Boulevard, or rather the excess cost of gaining such access after the construction of the improvement."

Witness Spencer, an engineer in charge of the advance planning and development work for the Pacific Electric Railway Company and the sole representative of that company on the Los Angeles County Grade-Crossing Committee, testified as follows: "If an application were made for authority to construct an overhead bridge over the Pacific Electric Company's tracks at any point along the right-of-way as depicted on Plaintiff's Exhibit 20 and prior to the commencement of this action, which bridge conformed to the requirements of the public utilities commission of the State of California in the matter of design in overhead and side clearances, and there were no costs to the railway company, nor any change of grade involved, I could recommend that the authority be granted."

It must be noticed that the evidence (admitted over plaintiff's objections) given by defendants' witnesses concerning the overpass across the railway and with reference to the additional expense of spanning the freeway as against the cost of a bridge over the railway right of way is based on hearsay and on the conclusions of the witnesses without the support of facts. They *assumed* that an easement could be obtained from the railway company but no facts were stated upon which such assumption could be based. None of them made reference to the possibility of obtaining a right of way over Parcels 3A and 3B without which Cahuenga Boulevard could not be reached if the overpass should be constructed across the railway, except that Coffin "considered a conversation" (he did not say with whom) in which he was informed that permission to pass over such parcels could be obtained.

Coffin did not state the estimated cost of the 50-foot bridge over the right of way or of the 200-foot bridge across the freeway. He did not state how or from whom he had ascertained ''the attitude of the Pacific Electric Railway officials,'' whether or not they were persons who were authorized to bind the company, or what attitude they had expressed. He did not state the names of the persons with whom he had conferred concerning the possibility of obtaining permission to pass over Parcels 3A and 3B, whether with the owners or some unauthorized third parties, nor did he state whether, if such permission should be granted, a charge would be made therefor and if so how much.

Frisbie did not state the names of the engineers and officials of the Pacific Electric Railway Company with whom he had conversed or what assurance, if any, they had given that an overpass would be permitted and he gave no reason for his assumption that such permission would be granted and no facts in support of his supposition.

Schmutz also considered the ''attitude'' of the Pacific Electric officials without naming them or enlightening the court as to their ''attitude.''

Spencer, an engineer employed by the railway company, the only witness who might have given a ray of hope that an overpass would have been permitted by the company, said no more than that he ''*could* recommend'' that the company's consent be granted, provided the bridge conformed to the requirements of the Public Utilities Commission. He did not say he *would* have so recommended nor did he claim to have had authority to bind the company and there is no intimation that he or anyone else had conferred with his superior officers or that they would have acted favorably on defendants' application or on Spencer's recommendation if given.

Furthermore, the consent of the railway company would not have assured defendants the right to construct the overpass. The sanction of the Public Utilities Commission of the state is necessary before a structure may be erected over railway tracks and the design and clearance must have the approval of the commission. The record is destitute of any evidence that a design of the overpass had ever been prepared or that the commission had been approached for the purpose of ascertaining the possibility of its approval if and when presented.

Every witness based his evidence as to the amount that should be awarded as severance damages upon the ''loss

of access," yet each well knew that defendants had no right of access across any of the lands intervening between defendants' property and Cahuenga Boulevard, therefore they had not lost it. It is manifest that all the evidence regarding the overpass and its cost and the "loss of access" is immaterial and irrelevant and the court erred in admitting it.

In view of the state of the evidence the court found (it could not have done otherwise) that defendants did not own or possess a right of access over the railway right of way or the property southerly therefrom, yet it also found that they were entitled to compensation for a "possible and desirable overpass" which was rendered more costly by the taking of the land condemned and that the market value of Parcel 1B had been reduced in the amount of the excess cost. The two findings are irreconcilable. The first is sustained by the evidence, the second is not.

The Constitution (art. I, § 14) provides: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner, . . ." Section 1248 of the Code of Civil Procedure reads: "The court . . . must ascertain and assess: . . . 2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff;" It will become clear from the discussion to follow that the cost of the overpass is not the character of damage referred to in the Constitution nor is there any requirement or justification in the code provision that an allowance be made as severance damage since it is not a damage that is caused to the land not condemned by reason of the severance of Parcel 1A from the larger parcel.

The award of $40,000 for the alleged excess cost of an overpass is indefensible even if the evidence admitted with reference thereto were unobjectionable. While the recovery of damages is not limited to instances of actual invasion of the land itself, yet damages can be justified only by evidence of direct physical disturbance of *an existing right,* either public or private, which the owner possesses in connection with his property and which gives an additional value to it and by evidence that through such disturbance he has sustained a special damage with respect to his property or to a right appurtenant thereto different from or in excess of that

suffered by the public in general. (*Coast Counties G. & E. Co.* v. *Miller & Lux, Inc.,* 118 Cal. 140, 144 [5 P.2d 34] ; *Rigney* v. *Chicago,* 102 Ill. 64, 80-81; *Otis Elevator Co.* v. *Chicago,* 263 Ill. 419 [105 N.E. 338, 340, 52 L.R.A.N.S. 192] ; *Illinois P. & L. Corp.* v. *Talbott,* 321 Ill. 538 [152 N.E. 486, 489].)

Where a landowner asserted a claim to compensation for the value of wharf privileges although he had no wharf franchise, it was held he was entitled to the value of the land in its then condition and not what it would be worth if something should be annexed to it at some future time; the fact that he might at a later date obtain a franchise from the state, if he were permitted to remain the owner of the land, was too remote and speculative to be given consideration, and evidence relating to such future prospective improvement was inadmissible. (*Central Pac. R. R. Co.* v. *Pearson,* 35 Cal. 247, 262.) Depression of the market value of property may be and frequently is attributable to causes other than those for which the owner is entitled to be compensated. To sustain a recovery the depreciation must be caused by an actionable injury. (*Rose* v. *State,* 19 Cal.2d 713, 739 [123 P.2d 505].)

 Defendants' witnesses testified that the highest and best use for which Parcel 1B could be devoted was for multiple family garden-type housing projects, hotel sites, sports and amusement enterprises after grading, institutional use, and possibly future subdivision; that in the absence of a crossover to Cahuenga Boulevard "the property definitely could not be devoted to such use"; that an access road leading west to Lankershim Boulevard would not be adequate to serve the property; that in order to develop the land an access road leading "to the very heart of the property" would be necessary and that such a road "could best be provided by an overpass across the Pacific Electric Railway to Cahuenga." Such evidence cannot be considered in determining severance damages and should not have been admitted. If an overpass were the paramount necessity to the development of the property for its highest and best use such use could not have been attained since there was no overpass and no evidence that one could ever have been constructed had the condemnation not taken place. Moreover, the valuation of the property and the damages thereto should have been determined in view of the physical conditions actually existing on the date the value was required by law to be fixed and not with reference to a hoped for or conjectured prospective event or to conditions

as they might be if changed thereafter, nor even with reference to what was then reasonably forseeable in the future.

There can be no detriment to a right which never existed and no compensation for a loss not sustained. The construction of the freeway improvement did not cause defendants to lose an easement for access to Cahuenga Boulevard since it had never been acquired. Manifestly plaintiff cannot be required to pay damages for injury to a nonexistent right or for a mere hope, surmise, conjecture or expectancy that a right might possibly be obtained in the future (*Colusa & Hamilton R. R. Co.* v. *Leonard*, 176 Cal. 109, 125-7 [167 P. 878]) or for "remote, speculative, imaginary, uncertain or conjectural possibilities." (*Yolo W. & P. Co.* v. *Hudson*, 182 Cal. 48, 53-4 [186 P. 772]; *Arnerich* v. *Almaden Vineyards Corp.*, 52 Cal.App.2d 265, 272 [126 P.2d 121].) "[S]everance damage must be based upon some real physical disturbance of a property right which naturally tends to and actually does decrease the market value" and "mere fears of remote or contingent possibilities" will not justify a judgment for such damages. (*Coast Counties G. & E. Co.* v. *Miller & Lux, Inc.*, 118 Cal.App. 140, 144 [5 P.2d 34].) ▮ Merely rendering private property less desirable for certain purposes or the erection of an improvement that may result in impairing its salability is not an injury to the property itself; but if something is interposed that affects the enjoyment by the owner of some *actual, existing right* in reference to his property, thereby making the property itself intrinsically less valuable, damage has resulted for which compensation must be paid. (*Eachus* v. *Los Angeles Consol. El. R. Co.*, 103 Cal. 614, 617 [37 P. 750, 42 Am.St.Rep. 149].)

▮ Not every cause of depreciation in the value of property is compensable. An injury is not peculiar to abutting property merely by reason of the fact that diminution in its value results. Only the value of the property itself and damage thereto may be considered. ▮ Injury to business is a detriment to its owner but it is not a damage to the property on which it is conducted, hence a property owner is not entitled to damages for loss of business caused by an improvement or by diversion of traffic. (*Rose* v. *State*, 19 Cal.2d 713, 737 [123 P.2d 505]; *Oakland* v. *Pacific Coast L. & M. Co.*, 171 Cal. 392, 399 [153 P. 705].) In *Bacich* v. *Board of Control*, 23 Cal.2d 343 [144 P.2d 818], the plaintiff was held (p. 349) to be entitled to damages to "a property

right known as the right of access'' which extends in both directions to the next intersecting street, and the loss of access at one end of the street on which his property abutted was held to be a compensable injury. In the Bacich case a right of access to the intersecting street which he had possessed and used was destroyed by the public improvement. But he was denied compensation for depreciation in value of his property which followed (1) from the removal of residences from other property leaving it vacant and (2) from the discontinuance of a street railway (p. 355), although a street railway is a convenience to property owners and its removal results in depreciating the value of adjacent land.

In *People* v. *Ricciardi*, 23 Cal.2d 390 [144 P.2d 799], upon which defendants here rely strongly, the defendants were not claiming damages by reason of a speculative or conjectural possibility but for an actually existing and long-used right. They owned property fronting on two intersecting boulevards and ingress and egress was afforded the entire property along both with driveways from each leading into the property. As abutting landowners they were held to be entitled to damages for the impairment of the direct access to their property which they had long enjoyed.

Counsel agree that there is no case in California in which a situation similar to that in the instant case has arisen. However there are analogous cases in other jurisdictions. Where the grade of a street was changed in order to eliminate a grade crossing, railway tracks were depressed and an overpass carried the street over the railway. Landowners whose property was separated from the railway by other property, although they never had had access to the railway tracks, claimed damages for the loss of ''possible'' access thereto by means of a private switch track across intervening property to the claimants' land. Their contention was held to be unsustainable because the deprivation ''of the possibility of a private switch track is too remote and speculative to be the basis of an award of damages.'' (*In re Grade Crossing Comrs.*, 207 N.Y. 52 [100 N.E. 714, Ann.Cas. 1914C 271].) In a similar case damages were denied where the ''possible'' switch track, in order to reach the claimant's property, would have to cross a public street and private lands not owned by either the railroad company or the claimant. (*In re Grade Crossing Comrs.*, 176 App.Div. 349 [162 N.Y.S. 1092, 1094]. Appeal dismissed 220 N.Y. 770 [116 N.E. 1048].) In *East Side L. & S. Dist.* v. *East St. Louis & C. Ry. Co.*, 279 Ill. 123 [116 N.E. 720,

725], the court held that the railway company was not entitled to damages for a double-track bridge and the elevation of its embankment for a double track since the track was not in operation when the condemnation proceeding was instituted, the court saying that "damages for future use, even though plans have been made by the railroad company, are too remote and speculative to be considered."

The case of *Otis Elevator Co.* v. *Chicago*, 263 Ill. 419 [105 N.E. 338, 52 L.R.A.N.S. 192], is an example more cogent than the cases above cited of depreciation of the value of property by reason of the disturbance of access rights, existing and in actual use, for which compensation in damages was refused. Access to a railroad by means of a switch track used for the purpose of serving the business maintained by the plaintiff on its property was destroyed. There was no contract with the railroad company and no statute requiring the maintenance of the switch track for the plaintiff's business. No compensation for damages was allowed because there was "no physical invasion of the premises" or of a right of access to which the plaintiff was legally entitled, although it was conceded that the value of the premises had been depreciated by depriving the plaintiff of the benefits accruing to its property by reason of the switch connection.

If the owners of property that is actually damaged suffer real financial loss for which they cannot be compensated, how then in the instant case can the allowance of damages to defendants be justified for a "right of access" or increase of the cost of an access or easement that does not exist, never existed and is no nearer actuality than a conjecture or speculation with no basis of fact or even a promise? The question answers itself.

The fallacy of defendants' contention and of the finding that they are entitled to damages for the additional cost of a "desirable overpass" is illustrated by any one of several supposititious situations in no one of which could defendants have recovered damages:

(1) Had the freeway been constructed entirely along the southerly line of the railway right of way (on Parcels 3A and 3B) and defendants' land had not been encroached upon the overpass would have been no less "desirable" but its construction would have been much more costly than over the railway alone, in fact just as costly as now, if indeed it had

been possible to build it at all. If by such location of the freeway the market value of defendants' land had been depreciated they would not have had a valid claim against the city for damages.

(2) If the railway right of way had been widened to the south and no part of defendants' property had been taken their damage would have been as great as now but the railway company would not have been required to make recompense therefor.

(3) The abandonment of Cahuenga Boulevard as it presently exists and its relocation along a distant southerly route would have increased the cost of an easement across the intervening land but defendants would have had no recourse against the city or the state for such additional cost.

(4) Had defendants owned Parcel 3A as well as the land on the northerly side of the railway right of way and only Parcel 3A had been condemned no severance damage could have been allowed for the property north of the railway since damages are limited to contiguous lands not separated from the condemned land by other property. (*County of San Mateo* v. *Christen*, 22 Cal.App.2d 375, 380-1 [71 P.2d 88].)

In each of the foregoing instances defendants' cost of reaching Cahuenga Boulevard by overpass (if they had obtained the right therefor) would have been greater than over the railway right of way as it formerly existed, but under the authorities cited such additional cost could not have been allowed as damages.

Defendants' contention is that they are entitled to recover the additional cost of the overpass because Parcel A1 has been taken but admit they could not have claimed such damage if the freeway had been located elsewhere and no part of their property had been condemned. They say their defense of the award of severance damages is not based on the loss or impairment of the right to establish an access road to Parcel 1B but the damage awarded is to compensate them for the depreciation in the value of that parcel resulting from the additional cost of establishing an access road by means of a longer overpass than would have been required had Parcel 1A not been taken. These assertions are self-contradictory since the alleged depreciation of the value of Parcel 1B is not claimed to have been caused by any other means than the condemnation of Parcel 1A which they have argued is an impairment of their access to Parcel 1B. If the additional length of the overpass were the same the cost of building it

would be the same whether the freeway were north or south of the railway. If the overpass should be built such additional cost, which defendants refer to as severance damage, would be incurred in either case.

If with the taking of Parcel 1A plaintiff had also taken some other property of defendants accessory to the land condemned the law would have demanded that compensation be made therefor. But as we have already shown the cost of building an access road or overpass, either before or after the condemnation, does not enter into consideration for the reason that the right to construct it did not exist and defendants cannot be paid for a right or property they did not own. Their remaining property did not suffer depreciation in value by reason of the taking of an appurtenance since nothing appurtenant to it was taken or damaged and no property right was invaded.

Defendants maintain they are entitled to damages as awarded even though there has not been an ''actual physical invasion'' of their property, relying on cases in which no part of the land itself has been taken but the owner's right of access has been impaired, citing *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818] and *People* v. *Ricciardi,* 23 Cal. 2d 390 [144 P.2d 799]. In these cases, as we have already pointed out, the landowners did not have merely a possibility of access to the street or highway depending on whether a right to cross the lands of others could be obtained, but they each had a ''property right known as an easement of access'' which they had actually used for many years in going to and from their respective properties. In the Ricciardi case the access was directly into two highways and in the Bacich case the plaintiff's access to a street at the end of the block in which his residence was located was cut off.

An easement is property and the taking or impairing of the ''easement of access'' is a direct physical disturbance and an invasion of an existing property right for which compensation must be made just as for the land itself when taken for public use. Since defendants had no easement of access to Cahuenga Boulevard they had no property right; since no property right was taken in the condemnation proceedings they have no supportable claim for damages on that account.

Granting that the overpass is ''desirable'' there is no evidence that its construction is ''possible.'' Since defendants did not have an ''easement of access'' or right to build the overpass they were not deprived of any right of property

by the condemnation proceedings and are therefore not entitled to that element of the severance damages awarded by the trial court for the cost of a longer ''possible and desirable overpass.'' Such award is a gratuity since it rests upon a mere surmise that at some indefinite time in the future defendants might possibly have been able to obtain (1) the necessary easement from the railway company, (2) the approval of the Public Utilities Commission, (3) an easement for a roadway across the property lying between the railway right of way and Cahuenga Boulevard, and (4) the approval by the city or the state of the connection of such roadway with Cahuenga Boulevard.

It is ordered: (1) That the findings of fact be and are amended as follows: (a) In paragraph XVII strike from the first sentence ''$64,471.00'' and insert ''$24,471.00''; (b) strike subparagraph 2 from paragraph XVII; (c) in paragraph XXIII strike ''$97,595.17'' and insert ''$57,595.17''; (d) in paragraph XXV strike ''$64,471.00'' and insert ''$24,-471.00''; (e) in paragraph XXV strike ''$112,525.00'' and insert ''$72,525.00''; (2) that the judgment be and is modified to conform to the findings as hereinabove amended and as so modified the judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied November 2, 1949, and respondents' petition for a hearing by the Supreme Court was denied December 15, 1949. Carter, J., and Schauer, J., voted for a hearing.